**M.T. PROPERTIES, INC., Relator,**

v.

**Joseph N. ALEXANDER, Commissioner of the Minnesota Department of Natural Resources, Williams Pipe Line Company, Respondents.**

No. C8-88-1527.

Court of Appeals of Minnesota.

Dec. 20, 1988.

Review Denied Feb. 22, 1989.

Timothy R. Thornton, Susan B. Thomas, Michael Thomas Miller, Briggs and Morgan, Minneapolis, for M.T. Properties, Inc.

Hubert H. Humphrey, III, Atty. Gen., William A. Szotkowski, Sp. Asst. Atty. Gen., St. Paul, for Joseph N. Alexander, Com'r of the Minnesota Dept. of Natural Resources.

Lawrence E. Meuwissen, O'Connor & Hannan, Minneapolis, for Williams Pipe Line Co.

Heard, considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE *, JJ.

* Acting as judge of the Court of Appeals by ap-

## OPINION

HUSPENI, Judge.

On discretionary review, relator M.T. Properties challenges the letter decision of the Commissioner of Natural Resources approving Williams Pipe Line Company's petition for use of eminent domain powers pursuant to Minn.Stat. § 117.49. We affirm.

## FACTS

Williams Pipe Line Company (WPC) owns a pipeline that carries petroleum products from Roseville through Duluth to Wrenshall, Minnesota. Minn.Stat. § 117.48 (Supp.1987) authorizes WPC and similar companies to acquire easements or rights-of-way over property by eminent domain for business purposes:

> The business of transporting crude petroleum, oil, their related products and derivatives including liquefied hydrocarbons, or natural gas by pipeline as a common carrier, is declared to be in the public interest and necessary to the public welfare, and the taking of private property therefor is declared to be for a public use and purpose. Any corporation or association qualified to do business in the state of Minnesota engaged in or preparing to engage in the business of transporting crude petroleum, oil, their related products and derivatives including liquefied hydrocarbons, or natural gas by pipeline as a common carrier, is authorized to acquire, for the purpose of such business, easements or rights-of-way, over, through, under or across any lands, not owned by the state or devoted to a public purpose for the construction, erection, laying, maintaining, operating, altering, repairing, renewing and removing in whole or in part, a pipeline for the transportation of crude petroleum, oil, their related products and derivatives including liquefied hydrocarbons, or natural gas. To such end it shall have and enjoy the right of eminent domain to be

exercised in accordance with this chapter, * * *.

*Id.* Minn.Stat. § 117.49 (Supp.1987) requires such companies to first obtain approval of the plan from the Commissioner of Natural Resources (Commissioner):

In the event that the right to exercise the power of eminent domain in accordance with this chapter, is granted by law to any person, * * * the right shall not be exercised by such person * * * until the plans of the project for which the exercise of the power * * * is proposed shall have first been submitted to and approved by the commissioner of natural resources. The plans shall be submitted in sufficient detail so that the commissioner can make a determination as to the impact that the proposed project will have on the environment. The commissioner * * * shall make a comprehensive review of such plans and make detailed comments on the effect that such project,

if pursued, would have on the environment, including recommendations for changes or alterations, if any, that would be required before such project would be approved by the commissioner. Failure of the commissioner to approve or disapprove the plans so submitted within 90 days after submission shall be deemed approval of the plans and the power of eminent domain may thereupon be exercised for such project. This section does not apply to use of eminent domain in regard to a pipeline for which a routing permit is required by section 116I.015.

*Id.* In March 1988, WPC requested approval of plans pursuant to the above statute for relocation of a stretch of pipeline less than three-fourths ($\frac{3}{4}$) mile in length near New Brighton. Due to its minimal length, the relocation is not subject to the substantial and elaborate protections provided for in Minn.Stat. § 116I.015 (Supp. 1987).[1]

---

1. Minn.Stat. § 116I.015 provides in part:

**Subd. 2. Prohibition.** A person may not construct a pipeline without a pipeline routing permit issued by the environmental quality board unless the pipeline is exempted from the board's routing authority under this section or rules adopted under this section. A pipeline requiring a permit may only be constructed on a route designated by the board.

**Subd. 3. Rules.** (a) the environmental quality board shall adopt rules governing the routing of pipelines. The rules apply only to the route of pipelines and may not set safety standards for the construction of pipelines.

(b) The rules must:

(1) require that a person proposing construction of a pipeline submit to the board one preferred route for the pipeline and evidence of consideration of alternatives;

(2) *provide for notice of proposed pipeline routes to local units of government and to owners and lessees of property along the routes being considered;*

(3) *provide for public hearings on proposed pipeline routes;*

(4) provide criteria that the board will use in determining pipeline routes, which must include the existence of populated areas, consideration of local government land use laws including ordinances adopted under section 299J.05, and the impact of the proposed pipeline on the natural environment;

(5) provide a procedure that the board will follow in issuing pipeline routing permits and require the board to issue the permits within

nine months after the permit application is received by the board, unless the board extends this deadline for cause;

(6) provide for the payment of fees by persons proposing to construct pipelines to cover the costs of the board in implementing this section;

(7) allow the board to provide exemptions from all or part of the pipeline routing permit application process in emergencies or if the board determines that the proposed pipeline will not have a significant impact on humans or the environment;

(8) require exemption determinations to be made within 90 days after an application; and

(9) require that a person who has constructed a pipeline, to the extent possible, restore the area affected by the pipeline to the natural conditions that existed immediately before construction of the pipeline, provided that this restoration is compatible with the safe operation, maintenance, and inspection of the pipeline.

(c) *The rules do not apply to* temporary use of a route for purposes other than installation of a pipeline, to securing survey or geological data, to repair or replacement of an existing pipeline within the existing right-of-way, or to *minor relocation of less than three-quarters of a mile of an existing pipeline.* The rules do not apply to construction of new pipeline in a right-of-way in which pipeline has been constructed before July 1, 1988, or in a right-of-way that has been approved by the board after July 1, 1988, except when the board

The relocation proposal concerns a length of pipeline that presently runs through land contaminated with hazardous wastes. Although the land is owned by M.T. Properties, a third party is responsible for the wastes. WPC is concerned about the integrity of the pipeline and its protective coating in the current location. Although no problems have yet been discovered along this portion of the site, WPC believes the potential for problems is present. M.T. Properties is concerned with the hazardous waste that will remain after WPC relocates.

The existing pipeline was installed and maintained under a right-of-way obtained by lease with the predecessor in interest to M.T. Properties. Negotiations for relocation of the pipeline ended after M.T. Properties requested a higher lease payment and an indemnification clause covering the clean-up of hazardous waste, should clean-up be required by state or federal authorities. WPC strongly opposes indemnification.

WPC did not notify M.T. Properties of its application to the Commissioner. On May 25, 1988, in an informal letter, the Commissioner notified WPC of his approval of their proposal. The decision was based on a description of the proposed relocation, a report from two Department of Natural Resources (DNR) planners who conducted an on-site review, additional information concerning the hazardous wastes from WPC, a recommendation from an independent groundwater consulting firm, the fact that the Minnesota Pollution Control Agency (MPCA) has ongoing remedial investigations on the waste pending against the companies responsible for the problem, and the agency's own expertise.

WPC initiated eminent domain proceedings against the property and M.T. Properties on June 29, 1988. M.T. Properties successfully petitioned this court for discretionary review of the Commissioner's decision, and answered WPC's petition. M.T. Properties also successfully moved the trial court to stay its proceedings pending this court's decision.

## ISSUES

1. Does the Commissioner's determination under Minn.Stat. § 117.49 require a contested case hearing or further procedural safeguards?

2. Are the Commissioner's findings supported by substantial evidence?

3. Is the Commissioner's determination arbitrary and capricious?

4. Did the amount and type of information provided by WPC in its application violate section 117.49?

## ANALYSIS

### I.

1. *Contested Case Hearing.*

■ M.T. Properties maintains that the Commissioner was required to hold a contested case hearing in this matter pursuant to the Minnesota Administrative Procedure Act (MAPA). *See* Minn.Stat. §§ 14.57–.70 (1986). A contested case hearing requires, inter alia, an official record and an opportunity to present evidence.

Minn.Stat. § 14.02, subd. 3 (1986) defines a "contested case" as:

a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing.

*Id.* Minn.Stat. § 14.57 states in part, "An agency shall initiate a contested case proceeding when one is required by law."

Section 117.49 (Supp.1987) does not require a hearing. The statute, on its face,

---

determines that there is a significant chance of an adverse effect on the environment or that there has been a significant change in land use or population density in or near the right-of-way since the first construction of pipeline in the right-of-way, or since the board first approved the right-of-way.
(Emphasis added).

and the Commissioner's decision, affect only WPC's right of eminent domain power in reference to the future pipeline location. M.T. Properties raises no objection to the future location. The statute does not affect any of M.T. Properties' property rights at the current location.

M.T. Properties maintains that the hearing requirement is implied from the purpose of the statute, which is to assure that a complete environmental assessment is given to a proposed pipeline project. A complete environmental assessment and other protective measures are specifically required for the vast majority of pipeline constructions. *See* Minn.Stat. § 116I.015 (Supp.1987). However, the legislature, in its amendment of section 117.49 in 1987, did not provide for such assessments in relocations of less than three-fourths (¾) mile.

This is not a traditional rate-making case or a case in which two parties are vying for a permit. *See Cable Communications Board v. Nor–West Cable*, 356 N.W.2d 658 (Minn.1984); *City of Moorhead v. Minnesota Public Utilities Commission*, 343 N.W.2d 843 (Minn.1984). In those cases, there is a clear adversarial relationship before the agency and thus a contested case hearing is required. In this case, that relationship does not arise until the condemnation action is filed. We conclude that the Commissioner would have no authority to address the concerns expressed by M.T. Properties relative to the current location. The legislature has clearly failed to provide for a contested case hearing under Minn. Stat. § 117.49 when less than three-fourths (¾) mile of pipeline relocation is involved.

### 2. *Due Process.*

■ Relator next argues that federal constitutional procedural due process requires a hearing under section 117.49. Again, we must disagree.

The requirements of procedural due process apply to the deprivation of liberty or property interests. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. * * * He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709; *see also Cable Communications Board*, 356 N.W.2d at 666. WPC sought approval of the Commissioner pursuant to section 117.49 in connection with that parcel of property to which WPC wishes to move the pipeline segment. M.T. Properties claims no procedural defects with regard to that proposed location. Even if we were to assume for purposes of this analysis that M.T. Properties' complaints about the present location could be addressed in a 117.49 proceeding, it would not necessarily follow that they would be entitled to a hearing:

> an owner of land ordinarily has no right to a judicial hearing on the necessity and expediency of a public improvement which will result in the taking of his land, * * * *he has no constitutional right to notice of the proceedings in which it is decided to construct the improvement and its location is fixed,* except in such states as, by express constitutional provision, make the necessity of a taking a judicial question. *All questions relating to exercise of the eminent domain power, which are political in their nature and rest in the exclusive control and discretion of the legislature, may be determined without notice to the owner of the property to be affected.*

*Housing & Redevelopment Authority v. Greenman*, 255 Minn. 396, 408–09, 96 N.W. 2d 673, 682 (1959) (citations omitted) (emphasis added). The legislature has given its discretion and control regarding the proposed location to the Commissioner through Minn.Stat. § 117.49. The relief requested by M.T. Properties was addressed in *Minneapolis Gas v. Dahle*, 285 Minn. 166, 171 N.W.2d 813 (1969). There, the

Minnesota Supreme Court held that regardless of a fee owner's well-founded apprehensions, a gas company was required to condemn only an easement, and the fee owner's remedy was limited to whatever damages might be proved in the condemnation proceedings. *Id.*

### 3. *Environmental Rights Legislation.*

■ M.T. Properties also argues that it is entitled to a hearing under the Minnesota Environmental Rights Act, Minn.Stat. §§ 116B.01–.13 (1986). While we do not quarrel with this assertion, we conclude that M.T. Properties is required to first bring suit under that act.[2]

■ Finally, M.T. Properties contends that an environmental assessment worksheet (EAW) is required for the proposed relocation pursuant to Minn.R. 4410.4300, subpt. 7(A) (1987). Rule 4410.4300 states:

**4410.4300 MANDATORY EAW CATEGORIES**

Subpart 1. **Threshold Test.** An EAW must be prepared for projects that meet or exceed the threshold of any of subparts 2 to 31, unless the project meets or exceeds any thresholds of part 4410.4400, in which case an EIS must be prepared.

\*　　\*　　\*　　\*　　\*　　\*

Subpt. 7. **Pipelines.** Items A and B designate the RGU for the type of project listed:

A. For *construction* of a pipeline, greater than six inches in diameter and having more than 50 miles of its length in Minnesota, \* \* \* the EQB shall be RGU.

\*　　\*　　\*　　\*　　\*　　\*

*Id.* (Emphasis added.) Because the rule applies to pipeline constructions rather

than relocations, Minn.R. 4410.4300, subpt. 7(A) has no application in this matter.

### II.

M.T. Properties alleges the Commissioner's findings are unsupported by substantial evidence as required by the MAPA in Minn.Stat. § 14.69(e) (1986). The Commissioner maintains, however, that his decision is not reviewable under that Act.

■ We believe this court has jurisdiction to discretionarily review the Commissioner's determination. Minn.Stat. § 480A.06 (Supp.1987); *see EPA Audio Visual, Inc. v. State*, 427 N.W.2d 271, 272 (Minn.Ct.App.1988) (jurisdiction extends to final decisions of all agencies regardless of whether a contested case hearing was held). However, Minn.Stat. § 117.49 does not contain a review standard. We are without legislative assistance to guide us in determining the standard by which to review the Commissioner's decision. We conclude the most appropriate standard to be that set forth in Minn.Stat. § 14.69:

In a judicial review [of contested cases], the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusions, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

no action shall be allowable hereunder for acts taken by a person on land leased or owned by said person pursuant to a permit or license issued by the owner of the land to said person which do not and can not reasonably be expected to pollute, impair, or destroy any other air, water, land, or other natural resources located within the state \* \* \*.

---

**2.** Minn.Stat. § 116B.03, provides in part:

Any \* \* \* corporation \* \* \* may maintain a civil action in the district court for declaratory or equitable relief in the name of the state of Minnesota against any person, for the protection of the air, water, land, or other natural resources located in the state, whether publicly or privately owned, from pollution, impairment, or destruction; provided, however, that

(f) Arbitrary or capricious.

■ All agency decisions receive a presumption of regularity; the burden of proof is on the challenger to establish that the agency's decision was improperly reached. *City of Moorhead*, 343 N.W.2d at 849. Deference is shown to agency expertise, lest the court substitute its judgment for that of the agency. *Manufactured Housing Institute v. Pettersen*, 347 N.W.2d 238, 244 (Minn.1984) (citation omitted).

This court may reverse or modify an administrative agency's decision if it finds that the decision is not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, or more than a scintilla of evidence. *Brinks, Inc. v. Minnesota Public Utilities Commission*, 355 N.W.2d 446, 450 (Minn.Ct. App.1984) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977)). The substantial evidence test requires the reviewing court to evaluate the evidence relied on by the fact finder in view of the entire record as submitted. *Minnesota Power & Light Co. v. Minnesota Public Utilities Commission*, 342 N.W.2d 324, 332 (Minn.1983).

■ M.T. Properties alleges that the record is devoid of evidence concerning the potential effects of hazardous waste, and therefore the Commissioner's decision is unsupported by substantial evidence. We cannot agree. The Commissioner stated:

Following review of the approval request and the proposed plans, and after conducting a field review of the proposed relocation site, *no areas of potential concern to the Department have been identified.*

Letter from Commissioner Joseph Alexander to Lawrence E. Meuwissen (May 25, 1988) (granting approval of WPC request to relocate pipeline) (emphasis added). The Commissioner specified the evidence he relied upon, and then made a detailed finding. The finding is supported by the field review

and the groundwater survey, which are contained in the record.

M.T. Properties further maintains that the finding is unsupported by substantial evidence because the Commissioner made an environmental determination only as to the relocation site, and not the existing location. Under section 117.49, only the future site was a proper issue before the Commissioner. The old site has no relevance to the exercise of eminent domain proceedings on the proposed site. *See* Minn.Stat. § 117.49. The current site is held under a lease agreement not involving the Commissioner. In any event, the Commissioner was made aware of the current site's condition through the field study which was conducted.

## III.

■ M.T. Properties also contends the Commissioner's letter decision was arbitrary and capricious due to a lack of written findings and conclusions.

An agency's decision is arbitrary and capricious when it represents the agency's will and not its judgment or when the decision is without evidence to support the conclusion.

*Matter of Whitehead*, 399 N.W.2d 226, 229 (Minn.Ct.App.1987) (citing *Bryan v. Community State Bank of Bloomington*, 285 Minn. 226, 234, 172 N.W.2d 771, 776 (1969)).

Normally, an agency decision not supported by written findings and conclusions will be held arbitrary and capricious because the decision "represents the agency's will rather than its judgment."

*In re Wastewater Treatment Facilities*, 366 N.W.2d 118, 121 (Minn.Ct.App.1985) (citations omitted). This court has previously stated:

[A]n agency decision should normally be supported by written findings and reasons, in more than just a conclusory fashion, before expecting the order or decision to be sustained on appeal.

*Reserve Mining Co. v. Minnesota Pollution Control Agency*, 364 N.W.2d 411, 415

(Minn.Ct.App.1985); *see also Wastewater Treatment Facilities*, 366 N.W.2d at 122.

The record on which the Commissioner's decision is based contains comments on both the current and proposed site. The Commissioner specifically found that the new site did not raise any areas of potential concern to the DNR. In our view, a reasonable interpretation of the statute indicates that the legislature intended to require the Commissioner to make detailed findings and recommendations only when DNR problems were foreseen. Section 117.49 sets forth the Commissioner's duties:

> The commissioner * * * [shall] make detailed comments on the effect that such project, if pursued, would have on the environment, including recommendations for changes or alterations, *if any,* that would be required before such project would be approved by the commissioner. *Failure of the commissioner to approve or disapprove the plans so submitted within 90 days * * * shall be deemed approval of the plans and the power of eminent domain may be exercised for such project.*

(Emphasis added.)[3]

We conclude that the Commissioner's letter decision was neither arbitrary nor capricious.

## IV.

Finally, M.T. Properties maintains WPC sought approval of its relocation in violation of section 117.49 because it failed to provide a sufficiently detailed plan to allow the Commissioner to make an informed decision.

The statute requires WPC to submit plans "in sufficient detail so that the Com-

missioner can make a determination as to the impact * * * the * * * project will have on the environment." *Id.* This language indicates that the Commissioner, in his discretion, will determine whether sufficient information has been presented. This is, in fact, what occurred. WPC initially sent only a letter and a land plat covering both sites as an application. The letter explained the history of the current pipeline and expressed concern due to the potential hazard to the integrity of the pipeline, and WPC's ability to conduct routine inspections and maintenance in its current location. Upon the Commissioner's request, WPC also submitted an expert's groundwater report. The Commissioner did not deem it necessary to request additional information. We decline to attempt to substitute our judgment for the Commissioner's, and conclude that he had sufficient data before him to enable him to make an informed decision.[4]

## DECISION

The Commissioner's decision under Minn. Stat. § 117.49 does not afford M.T. Properties the right to a contested case hearing or further procedural safeguards. Upon accepting this case for discretionary review, we find the Commissioner's decision supported by substantial evidence and not arbitrary and capricious. WPC's application complied with Minn.Stat. § 117.49.

AFFIRMED.

---

**3.** The fact that the statute allows an applicant to proceed with condemnation proceedings if it has not received comments or a letter from the Commissioner within 90 days of the application, arguably further weakens the allegation of M.T. Properties that the Commissioner's decision was arbitrary and capricious. A clear reading of the statute indicates that the legislature did not, in fact, require the Commissioner to make any decision at all, but provided that failure to timely approve or disapprove plans would be deemed approval thereof.

**4.** Our observations in footnote 3 apply to this issue as well.