ROCHESTER DAIRY COMPANY v. VICTOR CHRISTGAU.[1]

May 26, 1944.

No. 33,669.

[1]Reported in 14 N. W. (2d) 780.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for appellant.

*Allen & Allen* and *Doherty, Rumble, Butler, Sullivan & Mitchell,* for respondent.

JULIUS J. OLSON, JUSTICE.

This is an appeal by the director of the division of employment and security (hereinafter referred to as the director or the division) from an order of the district court of Olmsted county setting aside the findings and decision of a referee holding, in effect, that one Walters was an employe of the Rochester Dairy Company (hereinafter referred to as the dairy), "that all of the services performed" by him were those of an employe, and that he was not an independent contractor. The referee's conclusion was that the dairy was liable to the division for the statutory "contributions" with respect to "all remuneration paid or payable" to Walters. This was the issue presented to the referee for decision. *Certiorari* brought the question before the district court, where the matter was submitted and determined upon the director's return. Based thereon, the court set aside the referee's decision and made findings and conclusions of law of its own. Its findings were that Walters was not an employe of the dairy but an independent contractor. As a conclusion of law, the court held that the services performed

are not "within the purview" of the security act, and therefore that the dairy is not liable "for any contributions with respect to any remuneration paid or payable for such services."

The contract is in writing. In its memorandum the court aptly states: "The contract is an admirable piece of draftsmanship. It is expressed in clear, simple, definite language, free from ambiguity. There is no excuse for the court to read into it anything that is not there." And further: "in this connection it may be noted that a contract for a full year, which renews itself automatically from year to year, is no insignificant protection against unemployment." Nor can there be any question that the contract was drawn "for the express purpose of making the hauler an independent contractor. This was a lawful purpose" and "such a relation is not against public policy." Since there was nothing in the evidence to show that the contract was "in any sense fictitious or sham" and as it had been voluntarily entered into by the hauler without persuasion from any source, the result was "not a case where one who is an employee in fact has been persuaded to sign away his statutory rights."

Reading the act in its entirety, one is led to the view that the legislature did not intend to destroy the right of competent parties to negotiate and perform contracts of this type. We are required to construe the terms of a new and untried act. Of course, we should not view the act with hostility, since it is remedial in its purpose. Under such circumstances, it should receive at our hands that liberality of construction ordinarily accorded such legislation. But even as so construed, one cannot escape the conclusion that simplicity does not inhere in its terms. An attempt to reconcile its numerous definitions, provisions, and exceptions is like threading a maze. Our task here is thus made more difficult. Counsel for the parties freely concede this. They have presented their arguments in lawyer-like fashion, free from subterfuge or misstatement of either law or fact. They deserve credit for the efforts they have made to assist us. Fortunately, we are not required to alter, distinguish, or overrule former decision law, here or elsewhere, since

the interpretation required will blaze a trail. The director freely concedes that ours is the only state "in which the provision [for unemployment contribution] covers the contractor or subcontractor himself [in this case the milk hauler]." We are neither helped nor hindered by precedents. Consequently, our interpretation will not destroy rights or impose liabilities established by former judicial determination.

That the director does not lean too heavily upon the theory of the employer-employe relationship between the dairy and Walters is apparent from a reading of his brief. Practically all his arguments are devoted to the proposition that, "if the court should hold the relationship of master and servant did not exist between the [milk] haulers and the employing unit [the dairy], nevertheless," under Minn. St. 1941, § 268.04, subd. 9 (Mason St. 1941 Supp. § 4337-22H), "such haulers are to be deemed as employees" of the dairy "for the purposes of unemployment contributions and benefits." He quotes extensively from this lengthy and involved section and italicizes the part which he thinks is "involved in this case." We quote the following portion (using his italicization):

" 'Employing unit' means any * * * type of organization * * * which has, or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it. All individuals performing services within this state for any employing unit which maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of this act. *Notwithstanding any inconsistent provisions of this act when any employing unit contracts with or has under it any contractor or subcontractor for any work which is part of its usual trade, occupation, profession, or business, unless the employing unit, as well as each such contractor or subcontractor, is an employer by reason of section 4337-22I or section 4337-29C of this act, the employing unit shall, for all the purposes of this act, be deemed to employ each such contractor or subcontractor and individuals in his employ for each day during which such contractor, subcontractor, and individual, is engaged in performing such work;*

*except that each such contractor or subcontractor who is an em-
ployer by reason of section 4337-22I of this act shall alone be liable
for the employer's contributions measured by wages payable to in-
dividuals in his employ.* Each individual employed to perform or
assist in performing the work of any agent or individual employed
by an employing unit shall be deemed to be employed by such em-
ploying unit for all the purposes of this act whether such individual
was hired or paid directly by such employing unit or by such agent
or individual, provided the employing unit had actual or construc-
tive knowledge of such work."

We have recited the essential facts, but on the subject of whether
the status of the truck hauler was that of an independent contractor
or an employe we deem it necessary to refer to certain additional
facts which we think go to establish the true relationship between
the parties.

As we have seen, the contract was in writing, drawn in such
terms as to leave no doubt that the parties deemed the relationship
on the part of the hauler to be that of an independent contractor.
Therein the hauler agreed, for a fixed price, to pick up each day,
Sundays and holidays included, upon an established route, the milk
of designated farmers who produced the milk, and haul the same
to the dairy's plant at Rochester. When the cans were emptied
there, the hauler was required to return them to the owners on the
next day's trip. The farmers paid a stated price of 15 cents per
100 pounds of milk so hauled. As a matter of convenience and
agreement, the dairy paid the hauler that price and reimbursed
itself by charging the amount against each farmer, deducting the
amount due from the credit given the farmer for the milk delivered.
Furthermore, the hauler was required to and did furnish, at his
own risk, the equipment needed and used by him on the job. He
had "full and complete liberty to use his own free and uncontrolled
will, judgment and discretion as to the method and manner of his
performance of each and every obligation" assumed by him, all
"without any right whatever on the part" of the dairy "to direct
or control in any way or in any degree" the hauler's contractual

performance. He was required to "furnish workmen's compensation insurance * * * on his own employees; also public liability and property damage insurance on all equipment used" in the discharge of his contractual obligations. Such, briefly, are the terms of the contract. It was performed by the parties in good faith. There was no fault found with it as long as the parties operated under its provisions.

■ Under the circumstances related and viewing the record as a whole, we think that the hauler here, as determined by the trial court, was an independent contractor. Our reasons for this conclusion are found in Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49, where our prior cases are reviewed. What the court there determined, upon facts rather similar to those here shown, is worthy of quotation (171 Minn. 19, 213 N. W. 50):

"* * * While the purpose of the law is remedial and it is not only expedient but highly just to give it a broad rather than a narrow scope, there are still limits beyond which it cannot be carried by judicial interpretation. We deny it effect on this case because it is one of independent contract and expressly excluded by § 4290.

"Many cases have been cited from other jurisdictions. We cannot discuss them in detail. They differ in applying the rule but agree that decision is governed by the presence or absence of the right of control. 'It is not the fact of actual interference with the control, but the right to interfere, that distinguishes an independent contractor from a servant or agent.' " (Citing cases.)

■ We now approach the second and final basis upon which the director relies for reversal. Reference has already been made to the great length of the statutory provision involved, with its many qualifications and exceptions. It covers six pages of our 1941 statutes. The legislature might very well have stated its will and purpose in a single sentence. It is little wonder that a reading of its numerous definitions, provisions, and exceptions leaves one with a feeling of utter frustration. We shall refer only to those portions

which, as we see them, have a reasonably direct bearing upon the issue presented by the director.

We find in § 268.04, subd. 6 (§ 4337-22E), that "'contributions' means the money payments * * * to be made into the state unemployment compensation fund by any employing unit on account of having individuals in its employ." Under subd. 11 thereof (§ 4337-22J), "employee" is defined to mean "every individual * * * who is performing * * * services in insured work." By subd. 12(1), (§ 4337-22K[1]), we find that "employment" means "service * * * performed for wages or under any contract of hire * * * where the relationship of master and servant exists." Subd. 12(5), (§ 4337-22K[5]), speaks of "services performed by an individual for wages," which shall be deemed to be in "employment" and subject to the act "unless and until it is shown to the satisfaction of the director that the relationship of master and servant does not exist, as specified in clause (1) hereof or (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact; and (b) such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (c) such individual is customarily engaged in an independently established trade * * * or business." This is termed the "ABC test."

In the apt words of the director (Appellant's Brief, p. 24) : "The master and servant relationship has found its way into the Minnesota statute along with the ABC test," and the statute *"is unique in this respect."* He therefore thinks that the statute, in effect, is one "combining the master and servant rule with the ABC test." Then, subd. 12(6), (§ 4337-22K[6]), provides that "employment" shall not include "agricultural labor," and lists exceptions (a) to (u), many of which have subsections of their own. By subd. 21 (§ 4337-22T), "An individual shall be deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him." Subd. 23 (§ 4337-22V) defines

"wages" as "all remuneration for services, employment, including commissions * * *."

We think the trial judge was right in construing this section. He concluded that in determining whether the dairy was subject to the act "one must look to subparagraphs I, J and K" (Mason St. 1941 Supp.); that in doing so "the definitions of 'employer' and 'employee' are both made with reference to the definition of 'employment.'" The word "employer," he says, refers to having individuals in "employment," and an "employee" is one engaged in "insured work," which, in turn, means employment by employers as defined by the act. Therefore, concluded the court, "the definition of 'employment'" becomes the ultimate test. And since Walters was, "as a matter of law," an independent contractor and not a servant, there was no occasion to refer to the ABC test. That alternative had not come into play.

The statute has provided no test or standard for determining whether the performance of the service here involved creates the relationship of master and servant or that of independent contractor.

Affirmed.