Opinion
 

 HASTINGS, J.
 

 Appellants, Mary and Carolyn Fleming, filed an action for personal injuries against respondent, The Foothill-Montrose Ledger (“The Ledger”), and others in superior court. “The Ledger” moved for,
 
 *684
 
 and was granted, summary judgment and an order dismissing appellants’ complaint. (Code Civ. Proc., § 437c.) Appellants appeal the judgment of dismissal.
 

 This action arises out of an automobile-pedestrian collision which occurred July 25, 1973, on Samoa Avenue in La Crescenta. The minor plaintiff suffered severe personal injuries when struck by a car driven by defendant, Kenneth Gaudsmith. Russell Gaudsmith, age 11, the son of Kenneth Gaudsmith, was in the automobile at the time of the accident.
 

 For several months prior to the accident Russell Gaudsmith had delivered papers published by “The Ledger.” At the time of the accident defendant, Kenneth Gaudsmith, was driving his son for purposes of making newspaper collections for “The Ledger.”
 
 [1]
 

 Appellants seek to impose liability on respondent, “The Ledger,” on the theory that the son, Russell Gaudsmith, was the employee of “The Ledger” at the time of the accident since he was making collections for newspapers delivered. They assert that defendant, Kenneth Gaudsmith, the driver of the vehicle, is a subagent of his son, thereby invoking the doctrine of respondeat superior.
 

 The lower court granted respondent’s motion for summary judgment holding that there was no triable issue as to any material fact and that the son, Russell Gaudsmith, was an independent contractor as a matter of law. Appellants disagree contending it was a question of fact as to whether the son was an independent contractor or employee; therefore the trial court improperly granted the motion for summary judgment.
 

 The determination of whether one is an independent contractor or an employee is ordinarily a question of fact,
 
 Rogers
 
 v.
 
 Whitson,
 
 228 Cal.App.2d 662, 672 [39 Cal.Rptr. 849], but that is not always true. In the leading case of
 
 Yucaipa Farmers etc. Assn.
 
 v.
 
 Ind. Acc. Com.,
 
 55 Cal.App.2d 234, 238 [130 P.2d 146], the court said: “If from all of the facts only a single inference and one conclusion may be drawn, whether one be an employee or independent contractor is a question of law . .. .” (See also
 
 Mantonya
 
 v.
 
 Bratlie,
 
 33 Cal.2d 120, 128-129 [199 P.2d 677];
 
 Baugh
 
 v.
 
 Rogers,
 
 24 Cal.2d 200, 206 [148 P.2d 633, 152 A.L.R. 1043].)
 

 
 *685
 
 Appellants and respondent agree that a primary issue in determining whether a person is an employee or an independent contractor is one of control.
 
 Green
 
 v. Soule, 145 Cal. 96, 99-100 [78 P. 337];
 
 Batt
 
 v.
 
 San Diego Sun Pub. Co., Ltd.,
 
 21 Cal.App.2d 429. 436 [69 P.2d 216];
 
 Bohanon
 
 v.
 
 James McClatchy Pub. Co.,
 
 16 Cal.App.2d 188, 199 [60 P.2d 510]. It was the burden of respondent to introduce, evidentiary facts in support of its motion sufficient to entitle it to judgment as a matter of law.
 
 (Coyne
 
 v.
 
 Krempels,
 
 36 Cal.2d 257, 261 [223 P.2d 244];
 
 People
 
 v.
 
 Rath Packing Co.,
 
 44 Cal.App.3d 56. 61 [118 Cal.Rptr. 438].)
 

 The declaration of Donald Ross, respondent’s circulation manager,
 
 [2]
 
 offered in support of the motion states: (1) the newscarriers buy from “The Ledger” papers required to serve his regular paying customers; (2) the newscarrier is supplied with excess papers from which to build up his route; (3) “The' Ledger” does not issue checks or payments to the carriers, nor does it withhold any tax or social security for them; (4) “The Ledger” delineates the carrier’s route, but he may deviate from that area; (5) “The Ledger” suggests a delivery time to newscarriers and an appropriate time of the month to collect for newspapers delivered; (6) no suggestions are made regarding delivery procedure (including whether or not the newscarrier is assisted in delivery) or method of transportation; (7) the newscarrier’s failure to deliver the paper on time or to make a collection at a reasonable hour would result in a discussion with “The Ledger.”
 

 Appellants contend respondent has failed to carry its burden of establishing Russell Gaudsmith to be a subcontractor as a inatter of law. They argue that: (1) respondent extensively supervises the n'ewscarrier’s work; (2) respondent has an unconditional right of discharge; (3) the newscarriers compensation is based upon labor not the final result. These factors appellant argues all establish that respondent has the control of an employer over his employee. As a final argument appellant states that since the Labor Code was recently revised according workers’ compensation to newscarriers the intent of the Legislature is that they should be treated as employees.
 

 Disposition
 

 (1) Appellants in support of their first argument cite
 
 Cal. Emp. Com.
 
 v.
 
 L.A. etc. News Corp.,
 
 (1944) 24 Cal.2d 421 [150 P.2d 186]. There it was
 
 *686
 
 held that the newscarriers are employees for purposes of the Unemployment Insurance Act.
 
 [3]
 
 In that case the employer-newspaper had the right to entirely control the newscarriers. They were required to walk their route, told how to.place the papers, told not to walk on lawns, required to report after delivery, and allowed to have only one helper who had to be approved by the employer. In our case although the respondent had a right to give suggestions to the newscarriers regarding, the time of delivery and could specify what should be done with “excess” papers used to boost circulation, the amount of control retained by respondent is a far cry from
 
 Cal. Emp. Com., supra.
 
 Here, the method of transportation used in delivery, placement of papers, route taken, and whether or not one or several helpers are used is left entirely up to the newscarrier.
 

 This situation seems akin to that in
 
 Bohanon
 
 v.
 
 James McClatchy Pub. Co., supra,
 
 16 Cal.App.2d 188, where the court held a newscarrier to be a subcontractor. There, the publisher had retained the right to designate the newscarrier’s route and had obligated the newscarrier to the earliest possible delivery. The court acknowledged that these limitations were an indication of some control but said at page 204: “. . . it must be borne in mind, as heretofore observed, that the control which is recognized as the test of the relationship means
 
 unqualified control,
 
 complete control, and that, in the very nature of things, a person who is beneficially interested in work which another is performing for him is permitted to exercise some measure of control without incurring the responsibilities or acquiring the immunities of a master, with respect to the person controlled.” (Italics added.) Respondent has not exercised such control over its newscarriers to create an employer-employee relationship.
 

 (2) Appellants next contend that the right of respondent to discharge the carrier is indicative of an employer-employee relationship,
 
 [4]
 
 citing
 
 Press Pub. Co.
 
 v.
 
 Industrial Acc. Com.,
 
 190 Cal. 114 [210 P. 820], where the court said at pages 119-120: “This, power of the employer to terminate the employment at any time is a strong circumstance tending
 
 *687
 
 to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by an independent contractor. Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so. [Citation.]”
 

 In
 
 Press Pub. Co.,
 
 there was no requirement of notice prior to dismissal. In the case at bar the contract provides for two weeks notice prior to dismissal by either side. Moreover, respondent is permitted to exercise some measure of control over the final result achieved by a newscarrier without thereby becoming employer-employee. So long as the right of discharge cannot be invoked capriciously, as here where it can only be invoked if the newscarrier’s services are “unsatisfactory,” it is not, “. . . conclusive evidence negativing independence of the person performing work for another.
 
 (Peters
 
 v.
 
 California Building-Loan Assn.,
 
 116 Cal.App. 143, 153 [2 Pac. (2d) 439].)”
 
 (Bohanon
 
 v.
 
 James McClatchy Pub. Co., supra,
 
 16 Cal.App.2d 188, 204;
 
 Batt
 
 v.
 
 San Diego Sun Pub. Co., Ltd., supra,
 
 21 Cal.App.2d 429, 436-437.) Respondent’s right of discharge is sufficiently limited so as not to give him the control of an employer over an employee.
 

 (3) Appellants argue that Russell Gaudsmith’s compensation was proportionate to the amount of labor he performed which is an indication of an employer-employee relationship.
 
 (Press Pub. Co.
 
 v.
 
 Industrial Acc. Com., supra,
 
 190 Cal. 114, 119.) Compensation based upon the result to be obtained is an indication of a contractor-subcontractor relationship.
 
 (Bohanon
 
 v.
 
 James McClatchy Pub. Co., supra,
 
 16 Cal.App.2d 188, 208;
 
 Batt
 
 v.
 
 San Diego Sun Pub. Co., Ltd., supra,
 
 21 Cal.App.2d 429, 434.)
 

 Russell Gaudsmith’s compensation is derived from collections made from customers. He pays respondent the wholesale price and retains the difference. The newscarrier in
 
 Press Pub. Co., supra,
 
 was paid a flat rate for delivery as were the newscarriers in
 
 Cal. Emp. Com., supra.
 
 In
 
 Batt, supra,
 
 and
 
 Bohanon, supra,
 
 as in the case at bar, the newscarriers compensation was based upon the difference between the wholesale price paid to the paper and the retail price collected from the customer. It is true that in
 
 Batt,
 
 and
 
 Bohanon
 
 the carrier was required to pay. for all papers received, while Russell Gaudsmith only pays for the papers required to serve his regular paying customers. This fact cannot be said to shift the loss for nonpayment entirely to respondent, for when no collection is made, no income is received by the carrier as in
 
 Batt
 
 and
 
 *688
 

 Bohanon.
 
 The fact of compensation being tied to the result distinguishes the case at bar and
 
 Batt
 
 and
 
 Bohanon
 
 from
 
 Cal. Emp, Com.
 
 and
 
 Press Pub. Co.,
 
 where the carriers never paid for the papers but received a flat rate for delivery.
 

 (5) Appellants’ final argument is that since Russell Gaudsmith is arguably an employee under Labor Code, section 3352, subdivision (b),
 
 [5]
 
 he should be considered an employee in this setting.
 

 Section 3352 is part of division 4 of the Labor Code which is entitled “Workers’ Compensation and Insurance.” The definition of “employee” contained in section 3352 seems manifestly intended for purposes of workers’ compensation. The broad application of the workers’ compensation laws
 
 [6]
 
 cannot be used to define and expand the scope of liability to a third person for the acts of another. “Although there is considerable overlap between the two fields, in each context the determination of the presence or absence of a sufficient ‘employment’ relationship must ultimately depend on the purpose for which the inquiry is made.”
 
 (Laeng
 
 v.
 
 Workmen’s Comp. Appeals Bd.,
 
 6 Cal.3d 771, 778, fn. 7 [100 Cal.Rptr. 377, 494 P.2d 1]; see also
 
 Board
 
 v.
 
 Hearst Publications,
 
 322 U.S. 111, 124 [88 L.Ed. 1170, 1181, 64 S.Ct. 851].)
 

 For purposes of unemployment insurance
 
 [7]
 
 the Legislature has chosen to define “employee” in a different manner (which would exclude
 
 *689
 
 Russell Gaudsmith as an employee). Surely the appellants would not contend that a definition for purposes of workers’ compensation (Lab. Code, § 3352) should apply here while a definition for purposes of unemployment insurance (Unemp. Ins. Code, § 649) should not. Neither definition should apply because ours is not the situation for which they were designed. The correct determination of whether liability should attach to “The Ledger” should be made by application of tort law. This was properly done by the trial court.
 

 The judgment of the superior court is affirmed.
 

 Kaus, P. J„ and Stephens, J., concurred.
 

 [1]
 

 During the same period of time Russell Gaudsmith was also delivering a paper published by defendant, The Los Angeles Herald-Examiner. A motion for summary judgment was also granted in favor of The Herald-Examiner. Appellants are appealing the ruling in favor of “The Ledger” only, having dismissed The Herald-Examiner since filing the appeal.
 

 [2]
 

 Respondent supported its motion for summary judgment with Ross’ declaration. This declaration did not materially conflict with his
 
 deposition
 
 which was used by appellants in opposition.
 

 [3]
 

 It should be noted that appellant's reliance on this case is probably misplaced since it was overruled by section 7.2 of the Unemployment Insurance Act (Stats. 1945, ch. 140, § 1, p. 626) and Unemployment Insurance Code section 649 (Stats. 1953, ch. 308, § 649, p. 1476, amended by Stats. 1953, ch. 528, § 1, p. 1786). (For the text of the present statute see fn.
 
 7, post.)
 
 However, since the reasoning of the case regarding the distinction between a subcontractor and an agent is sound we have proceeded with a discussion of the facts.
 

 [4]
 

 Provision No. 4 of the “Paperboy Agreement" between Russell Gaudsmith and respondent states. “I understand that either party may cancel this agreement on a two weeks notice if the services provided for do not prove satisfactory."
 

 [5]
 

 At the time this action was filed Labor Code section 3352 stated: “ ‘Employee excludes: ...(b) Any person engaged in vending, selling, offering for sale, or delivering directly to the public, any newspaper, magazine, or periodical where the title thereto has passed to the person so engaged.” This exclusion was deleted by Statutes 1974, chapter 966, section 1, page 2013. Because we find the Labor Code inapplicable to the case at hand, we do not find it necessary to determine whether title has in fact passed from respondent to its newscarriers when the carrier receives possession.
 

 [6]
 

 Labor Code, section 3202 provides: “The provisions of Division 4 and Division 5 of this code shall be liberally construed by the courts with the purpose of extending their benefits to its newscarriers when the carrier receives possession.
 

 [7]
 

 Unemployment Insurance Code, section 649 provides:
 

 “ ‘Employment’ does not include service performed by an individual if:
 

 “(a) Such service is performed by an individual under the age of 18 in the delivery or distribution of newspapers, shopping news, or magazines, not including delivery or distribution to any point for subsequent delivery or distribution, unless such service is performed by an individual under the age of 18 whose principal occupation is regular full-time work and whose attendance at school is incidental to full-time
 

 “Such service is performed by an individual in, and at the time of, the sale of newspapers or magazines to ultimate consumers, under an arrangement under which the newspapers or magazines are to be sold by him at a fixed price, his compensation being based on the retention of the excess of such price over the amount at which the newspapers or magazines are charged to him whether or not he is guaranteed a minimum amount of compensation for such service, or is entitled to be credited with the unsold newspapers or magazines turned back.”