**Brad CAREY, Relator,**

v.

**COTY CONSTRUCTION, Respondent,**

**Commissioner of Jobs and Training, Respondent.**

**No. C8-86-664.**

Court of Appeals of Minnesota.

Sept. 2, 1986.

Richard L. Cesario, Minneapolis, for relator.

Loren Gross, Minneapolis, for respondent Coty Const.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondent Commissioner of Jobs and Training.

Considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Following a determination by a claims deputy that relator Brad Carey was an independent contractor, Carey appealed to a department referee. The referee reversed the claims deputy, finding that Carey was an employee of Coty Construction. Coty, in turn, appealed to a Commissioner's representative, who reversed the referee and held that Carey was an independent contractor. Carey has appealed to this court by writ of certiorari. We affirm.

## FACTS

In the summer of 1980, Brad Carey and Patrick Coty began roofing together under the name of C & C Construction. When the 1980 roofing season ended, the two men did not continue the business.

In 1983, Coty requested that Carey begin working with him again on roofing jobs. Carey agreed, and was paid $10 per hour doing work for Coty Construction. At this time, Carey was an employee of Coty Construction.

Towards the end of 1983, Coty spoke with a field auditor who recommended that Coty change some of his business practices. Specifically, the auditor indicated that Coty should hire independent contractors, instead of employees.

In early 1984, Carey indicated to Coty that he wanted to earn more money doing roofing, and suggested that he do work for Coty on a production, rather than an hourly, basis. Carey's request fit with the auditor's suggestion, and Coty agreed. The two agreed that Carey would be paid by the job on a per-square basis with no taxes withheld, and that Carey would provide his own liability insurance. Carey had some

trouble obtaining the insurance, but Coty advanced him the funds and thereafter deducted the money from his checks. Carey claims that Coty sent him to a particular insurance company and helped him to obtain coverage, and argues this is some evidence of an employer-employee relationship.

Coty supplied Carey with assistants who were hired by Coty but were paid by Carey by the hour out of the total amount he received for a job. One of these assistants was Coty's brother, and another was the brother of a man who was dating Coty's sister. Carey did not interview or hire the assistants himself; however, he did, as supervisor, fire one assistant in order to make room for Coty's brother.

Carey did not advertise, did not bid on jobs for Coty or others, and worked solely for Coty. Carey testified that he did not refuse to do any jobs for Coty during 1984 and the early part of 1985; however, Coty testified that upon several occasions Carey refused to work on buildings with steeply pitched roofs.

The parties' testimony also differed with regard to Coty's supervision of the job sites. Carey claimed that Coty checked his work daily and inspected it upon completion; he also testified that Coty told him to be at the job sites by 7:00 a.m., weather permitting. Carey did state, however: "I was in charge on the job but he [Coty] was there." Coty testified that he did not dictate Carey's hours of work or times for completion of jobs. Coty also stated that Carey alone was responsible for any warranty work which had to be done after a job was completed.

The parties also dispute whether Coty supplied Carey with tools, or whether Carey used his own tools. Carey testified that he bought a hip-pad, but did not own a hammer, pouch, roofing knife or any other roofing tools. Coty, on the other hand, testified that Carey did own a hammer, knife and apron but had exchanged them for others or had simply left them behind. He stated that he and Carey had used each others tools from time to time.

In April 1985, the parties agreed that Coty would resume providing insurance for Carey, and that Carey would again be paid on an hourly basis, with social security taxes withheld from his checks. It is not in controversy that from April until July 1985, Carey was an employee. In July 1985, a disagreement between the parties resulted in Carey's termination from employment. Carey applied for unemployment compensation benefits, claiming that he had been an employee of Coty from 1983 until his termination in 1985. The Commissioner's representative determined, however, that Carey had been an independent contractor just between April 1984 and April 1985. Carey appealed to this court by writ of certiorari.

### ISSUE

Was Carey an independent contractor or an employee of Coty Construction between April 1984 and April 1985?

### ANALYSIS

The question whether Carey was an employee or an independent contractor involves issues of both fact and law. *Wise v. Denesen Insulation Co.*, 387 N.W.2d 477, 479 (Minn.Ct.App.1986). Where the record is free from conflict as to the facts, the determination whether an employment relationship exists is a question of law. *Id.*, citing *Darvell v. Paul A. Laurence Co.*, 239 Minn. 55, 59, 57 N.W.2d 831, 834 (1953). However, here, as in *LeGrand Supper Club v. Seline*, 348 N.W.2d 805 (Minn.Ct.App.1984), the determination requires a resolution of disputed fact issues. In such instances, Minn.Stat. § 268.12, subd. 13(4) (1984) provides for appellate review pursuant to the provisions of the Administrative Procedures Act as outlined in Minn.Stat. Ch. 14. Therefore, we are limited to determining whether the court's factual findings are "[u]nsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 14.69(e) (1984).

Traditional factors to consider in determining whether an employment relationship exists include:

(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of materials or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.

*Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964). The most significant factor is the right of the purported employer to direct and control the method and manner of performance. *Id.*

 Although there is some evidence in the record to support a finding that Carey was Coty's employee, there is substantial evidence to uphold the Commissioner's determination that Carey was, in fact, an independent contractor during the time period in issue. Summarizing the evidence in accordance with the *Guhlke* factors, the Commissioner could properly find:

(1) Coty did not have the right to control the means and manner of Carey's performance. Carey himself testified that he was in charge on the job; Coty testified that Carey determined his own working hours and was responsible for his own warranty work.

(2) Carey was paid by the job, upon completion, rather than on an hourly basis. This fact was uncontested by the parties.

(3) Carey furnished his own materials and tools. Coty testified that Carey purchased his own hammer, knife, and apron (*cf. LeGrand Supper Club*, 348 N.W.2d at 808).

(4) Carey himself controlled the premises where the work was done. Carey testified that he was "in charge" at the roofing sites and Coty did not disagree.

No evidence was submitted regarding Coty's right to discharge Carey during the period in question, although Coty's attorney did argue that because Carey refused to work and was not discharged, there was no right to discharge. This argument of respondent is speculative. However, even without considering it, the record as a whole supports the Commissioner's find-ings on the nature of the business relationship between the two men.

## DECISION

The record contains substantial evidence to support the Commissioner's determination that relator was an independent contractor during the time period in issue.

Affirmed.