**LAKELAND TOOL AND ENGINEERING, INC.,
Relator,**

v.

**Marvin F. ENGLE, Commissioner of Jobs and Training, Respondents.**

**No. C2-89-1484.**

Court of Appeals of Minnesota.

Jan. 16, 1990.

**350**

Jeffrey G. Stephenson, Peterson, Tews and Squires, Minneapolis, for relator.

Marvin F. Engle, Pro Se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondent Commissioner of Jobs and Training.

Heard, considered and decided by SHORT, P.J., and RANDALL and STONE,* JJ.

## OPINION

RANDALL, Judge.

Relator seeks review of a determination that it was an "employer" for unemployment taxation purposes. We affirm.

## FACTS

Relator Lakeland Tool and Engineering, Inc. (Lakeland) is a Minnesota corporation engaged in the business of designing and building plastic injection molds. Due to periodic fluctuations in its workload, Lakeland sometimes hires additional temporary workers.

In late December 1985, respondent Marvin Engle contacted Lakeland, looking for work. Lakeland was in need of temporary help, and the parties agreed Lakeland would hire Engle directly, without going through a temporary help agency. Engle was hired on a temporary basis, and there was no evidence that he had previously worked for Lakeland. He began working as a contract designer in Lakeland's tooling department, designing molds and drawing up plans.

Engle worked for Lakeland until March 29, 1986, when he left to work for another company. In late December 1986, Engle went to the Department of Jobs and Training (Department), requesting unemployment compensation benefits from a prior claim. In response to a request by the Department, Engle supplied the names of the companies he had worked for during the past year, including Lakeland. The Department subsequently investigated the parties' working relationship and determined that an employer-employee relationship had existed for Lakeland's unemployment compensation tax reporting purposes.

Lakeland appealed to a Department referee, claiming that Engle was an independent contractor. At the hearing, Marty Sweerin, a 50 percent owner of relator, testified as to certain facts that he felt

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

showed Engle's independent contractor status. He testified that Engle was paid every week at the rate of $20 per hour. Unlike other Lakeland employees, Engle did not receive fringe benefits or workers' compensation, and no deductions were taken from his paycheck for taxes. Sweerin also testified that Engle was not reimbursed for any expenses. Sweerin further testified that he told Engle he wanted to be able to count on 40 hours per week. Unlike other Lakeland employees, Engle could set his own hours between 5:00 a.m. and 5:30 p.m., when Lakeland's building was open. We note, however, that even though Engle's hours were flexible, he would have been expected to call if he did not come in to work.

Relator pointed out that although other Lakeland employees were required to punch a time clock and were paid by payroll checks, Engle only turned in time slips each week indicating the hours he had worked. Upon turning in the slips, he received a company check, not a payroll check.

Engle's time sheets were required for two purposes: to determine how much Lakeland should pay Engle, and to determine if Lakeland's bids were accurate in terms of how many hours of work on a project were required. Engle turned in his hours on various scraps of paper; he was not required to turn in preprinted forms for reimbursement. Other than the time slips, Engle was not required to turn in any reports.

Engle was not informed of any company policies that other Lakeland employees were expected to follow, such as hours of work or use of the telephone for personal calls. Lakeland provided Engle with a drafting board and drafting machine, a chair and paper. Engle provided his own pencils, erasers, and drafting tools. Engle had his own drafting board and machine at home, but he used Lakeland's to avoid the trips back and forth which otherwise would have been necessary.

During his tenure at Lakeland, Engle was assigned 14 projects. He was assigned the same type of work as other employees; the tooling manager distributed work between Engle and Lakeland's regular full-time designer. In addition, Engle was subject to the same direction and instruction as other employees. Eighty percent of the instructions were dictated by the customer; twenty percent by Sweerin. When there was a question of work priorities, the decision would be made by the tooling manager.

Any deadlines were set by Lakeland and were dependent upon the customer's time frame. Sweerin testified that Engle was not really given deadlines; rather, he was informed of the time quoted to the customer for a project so that he would be aware of Lakeland's expectations.

The evidence indicated that Engle did not have an assistant, although he could have hired one without Lakeland's consent. Only the assistant's final product would have been subject to Lakeland's approval—not the assistant himself.

Engle worked full-time at Lakeland; however, Sweerin testified that Engle could have worked for another company—even a competitor—at the same time. Engle used Lakeland's telephone to look for other work, and he worked for eight or nine different places of business during the year in question.

Sweerin testified that Engle had the right to stop working for Lakeland at any time; in fact, at the time Engle left, Lakeland still had approximately one more week of work that Engle could have done. The testimony also indicated that Engle could have been discharged at any time.

Following the hearing, the referee affirmed the initial determination that an employment relationship existed between Lakeland and Engle and that remuneration paid to Engle should be considered "wages" for unemployment compensation reporting purposes. Lakeland appealed the referee's decision to a Commissioner's representative, who affirmed. Lakeland obtained a writ of certiorari, requesting this court to review the Commissioner's decision.

## ISSUES

1. Was the Commissioner's decision based upon substantial evidence in the record?

2. Was the Commissioner's decision arbitrary and capricious?

## ANALYSIS

### I.

■ Whether a worker is an employee or an independent contractor involves a mixed question of law and fact. *Wise v. Denesen Insulation Co.*, 387 N.W.2d 477, 479 (Minn. Ct.App.1986). Once the controlling facts are determined, the question whether a person is an employee becomes one of law. *See Darvell v. Paul A. Laurence Co.*, 239 Minn. 55, 59, 57 N.W.2d 831, 834 (1953).

The standard of review in cases involving the question whether an employment relationship exists is defined by the Administrative Procedure Act. Minn.Stat. § 268.12, subd. 13(4) (1986). This court must determine whether the Department's findings are supported by substantial evidence in view of the entire record and whether the Department's conclusions are arbitrary or capricious. Minn.Stat. § 14.69 (1986).

■ "Employment" is defined as "service * * * by an individual who is a servant under the law of master and servant or who performs services for any employing unit, unless such services are performed by an independent contractor." Minn.Stat. § 268.04, subd. 12 (1986). In *Geerdes v. J.R. Watkins Co.*, 258 Minn. 254, 103 N.W.2d 641 (1960), the court explained:

> The distinction between an employee and an independent contractor may be said to consist largely in the difference between one who undertakes to achieve a given result under an arrangement with another who has authoritative control over the manner and means in which and by which the result shall be accomplished and one who agrees to achieve a given result but is not subject to the orders of another as to the method or means to be used.

*Id.* at 262, 103 N.W.2d at 646 (footnote omitted). The label given by the parties themselves, however, is not determinative; the relationship is determined by law. *Johnson v. Independent School District No. 535*, 291 N.W.2d 699 (Minn.1980); *Speaks, Inc. v. Jensen*, 309 Minn. 48, 243 N.W.2d 142 (1976).

■ The following factors should be considered when determining whether an employment relationship exists:

(1) the right to control the means and manner of performance;

(2) the mode of payment;

(3) the furnishing of material or tools;

(4) the control of the premises where the work is done; and

(5) the right of the employer to discharge.

*Id.* at 50, 243 N.W.2d at 144, (quoting from *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326.) Department rules further explain these factors. *See* Minn.Rules 3315.1000; 1100 (1986).

Lakeland argues the Department's decision was unsupported by substantial evidence. We disagree. "Substantial evidence" is defined as: "1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than some evidence; 4) more than any evidence; and 5) evidence considered in its entirety." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977).

■ The Commissioner's determination that Lakeland was Engle's employer is supported by the evidence that Engle was compensated on an hourly basis; that he used Lakeland's material or tools; that Lakeland controlled its own premises and the hours Engle could work; that Engle could have been discharged or quit at any time; that he was assigned the same type of work and was subject to the same direction and instruction as other employees; that he was expected to work 40 hours per week and call in when absent; and that he was not in a position to realize a profit or suffer a loss as a result of his services.

The factual setting is admittedly close. Reasonable indicia of independent contractor status are present as are reasonable indicia of an employer/employee relationship. We view this as a case which walks like a duck and talks like a duck, but flies like a goose, and the Commissioner, having the difficult choice of having to make a call before he fired his shotgun, called it a duck.

On appeal from a commissioner's determination, we do not reweigh the evidence, reassess credibility, and arrive at a de novo determination; rather, since we do find substantial evidence to support the Commissioner's decision, we affirm. Minn.Stat. § 14.69(e) (1988).

## II.

Lakeland argues the Department's decision was arbitrary and capricious, representing its will and not its judgment. *Hough Transit, Ltd. v. Harig*, 373 N.W.2d 327, 332 (Minn.Ct.App.1985). "Arbitrary and capricious" is defined as a situation where the agency has exercised its will, and not its judgment. *Id.*

Lakeland first argues the Department's decision was arbitrary and capricious because it was unsupported by substantial evidence. These are two separate factors to be considered. *See* Minn.Stat. § 14.69(e), (f).

·  Lakeland also argues the Department's decision was arbitrary and capricious because Engle attempted to withdraw his application for unemployment compensation benefits, which should have resulted in this matter proceeding no further. However, as the referee noted, Engle's attempt to withdraw is irrelevant, since Lakeland was the appealing party.

## DECISION

The Commissioner's decision that Lakeland was Engle's employer for tax purposes is supported by substantial evidence in the record.

Affirmed.

SHORT, Judge (dissenting).

I respectfully dissent. I would reverse the decision of the Department of Jobs and Training on the grounds that the decision was arbitrary and capricious. *See* Minn. Stat. § 14.69(f) (1988). Respondent Engle made several attempts to withdraw his application for unemployment compensation. The department's refusal to permit a withdrawal of that claim suggests the agency's decision represents its will, not its judgment.