**BLUE & WHITE TAXI, Relator,**

v.

**David C. CARLSON, Commissioner of Jobs and Training, Respondents.**

No. C3–92–1584.

Court of Appeals of Minnesota.

March 2, 1993.

---

Daniel A. Eller, St. Cloud, for Blue & White Taxi.

Kent E. Todd, Minnesota Dept. of Jobs and Training, St. Paul, for Commissioner of Jobs and Training.

Considered and decided by FORSBERG, P.J., and PARKER and STONE *, JJ.

## OPINION

PARKER, Judge.

Relator Blue and White Taxi argues that the finding by the representative of the Commissioner of Jobs and Training of an employment relationship, rather than independent contractor status, between respondent Carlson and the taxi company is not supported by substantial evidence. We disagree and affirm.

## FACTS

Other than the employment relationship issue, the facts of this case are largely undisputed.

Respondent David Carlson signed a one-year "lease agreement" on May 21, 1991, with relator Blue and White Taxi (cab company), a subsidiary of Mid City Transit, a Minnesota corporation doing business in St. Cloud, Minnesota, since June 1990.

Under the lease drafted by the cab company's attorney, the company agreed to maintain a dispatch service, lease cabs to Carlson, dispatch calls to him, furnish oil and other lubricants, maintain the cabs,

and obtain liability insurance on the vehicles. Carlson's duties under the lease were to operate the cab in a careful and lawful manner, pay the company for damage to the vehicle caused by his negligence, pay a daily rental for the cab, and return it at the end of the shift, filled with gas at his expense.

In addition to these provisions, the lease provides that "lessor [cab company] reserves no right to direct or control lessee in the operation of the taxicab." It further provides:

Lessor is not an employer of lessee. Lessee is not an employee of lessor, but is an independent contractor. The only relationship between lessor and lessee is that of lessor-lessee.

The lease further provides that the lessor may terminate the lease upon lessee's failure to abide by laws and ordinances.

As of May 1991, the 24-hour taxi service had eight taxicabs and 20-25 drivers. James Wey, secretary-treasurer of Mid City Transit and manager of Blue and White Taxi, testified that the only workers considered by the cab company to be employees and for whom it paid unemployment insurance were the dispatchers.

The representative of the Commissioner of Jobs and Training found that the cab company had the right of control over the cab drivers and that, therefore, an employment relationship existed. He noted that the cab company assigned cabs to drivers and that drivers picked them up at the company shop. The company also assigned specific locations in which the drivers were to operate. Drivers were required to keep logs of their fares and were to turn in the logs at the end of the day.

The Commissioner also noted that the cab company took complaints from customers and counseled cab drivers regarding these complaints. When some customers complained that Carlson was overcharging and taking longer routes to destinations, Wey discussed it with Carlson. When the complaints continued, the cab company terminated Carlson.[1] In its one year of operation, the cab company had terminated one

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The issue of Carlson's termination for possible misconduct in failing to take the shortest routes was decided in his favor at an earlier hearing.

other lease, that of a driver who had accumulated three speeding tickets.

Carlson filed for unemployment compensation. The referee determined that an employer-employee relationship existed, and the Commissioner affirmed the referee's decision. This appeal followed.

## ISSUE

Is there substantial evidence to support the Commissioner's finding of an employment relationship between Carlson and the cab company?

## DISCUSSION

### Standard of Review

This court may, by writ of certiorari to the Commissioner, review all questions of law and fact presented by the record. Minn.Stat. § 268.12, subd. 13(4) (1990). This court may reverse or modify the decision if the findings, inferences, conclusions, or decisions are unsupported by substantial evidence in view of the entire record or are arbitrary and capricious. Minn.Stat. § 14.69 (1990). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion, or more than a scintilla of evidence." *M.T. Properties, Inc. v. Alexander,* 433 N.W.2d 886, 893 (Minn.App.1988), *pet. for rev. denied* (Minn. Feb. 22, 1989).

The determination of an employment relationship is a mixed question of fact and law. *Lakeland Tool & Eng'g, Inc. v. Engle,* 450 N.W.2d 349, 352 (Minn.App.1990). "Cases distinguishing between employees and independent contractors are often factually close." *North Face Exteriors v. Commissioner of Jobs and Training,* 457 N.W.2d 778, 780 (Minn.App.1990); *see also Lakeland Tool,* 450 N.W.d at 353.

■ The unemployment compensation statute is remedial in nature and should be liberally construed to achieve those ends. *Rochester Dairy Co. v. Christgau,* 217 Minn. 460, 465, 14 N.W.2d 780, 783 (1944) (quoting *Moore v. Kileen & Gillis,* 171 Minn. 15, 19, 213 N.W. 49, 50 (1927)).

### Employee or Independent Contractor

■ The cab company argues the Commissioner's finding of an employment relationship is not supported by substantial evidence and that, instead, the record indicates Carlson was an independent contractor.

"Employment" is any service performed by

any individual who is a servant under the law of master and servant or who performs such services for any employing unit, *unless such services are performed by an independent contractor.*

Minn.Stat. § 268.04, subd. 12(1)(c) (1990) (emphasis supplied).

The Minnesota Rules set forth factors the Commissioner is to consider in distinguishing employees from independent contractors. Of five factors to be considered, two are the most important: the right to control the means and manner of performance, and the right to discharge the worker without incurring liability. Minn.R. 3315.0555, subpt. 1(A)(B) (1991). Other factors are: the mode of payment, furnishing of materials and tools; and control over the premises where the services are performed. *Id.* at subpt. 1(B). Further factors to be considered in determining the existence of an employment relationship and the existence of a right of control are outlined in Minn.R. 3315.0555, subpts. 2, 3.

The Commissioner, upon consideration of the above factors, found the cab company had the right to control Carlson and that, therefore, an employment relationship existed.

The Commissioner's findings are supported by substantial evidence. We agree with the unemployment compensation referee that the "lease" between the cab company and Carlson was not a true lease. As the referee noted,

the claimant did not lease his own taxicab. The claimant shared eight taxicabs with approximately 20 other drivers and was assigned to different cabs at the will of the employer.

The "lease" appears to have been a stratagem by the employer to avoid paying unemployment compensation. The facts indi-

cate that an employment relationship, rather than an independent contractor status, existed.

The cab company had the right of control over Carlson and other drivers and, what is more, the company exercised this right. As the Commissioner noted, the company controlled the assigning of vehicles and drivers to various locations and times. Drivers completed and turned in log sheets showing their fares and trips. Wey's discussion of customer complaints with Carlson also indicates the company's right of control over Carlson. Finally, the company's termination of Carlson in response to customer complaints also illustrates exercise of a right of control.

Other facts also indicate that an employment relationship existed: the drivers had no substantial investment in the facilities used in performing their duties, as the company owned and maintained the cabs, and drivers were not free to take the vehicles home at the end of the day.

We note the existence of facts which could support a finding of independent contractor status, such as the drivers' freedom to set their own schedules. Nonetheless, the facts discussed above support the Commissioner's finding of an employment relationship between the cab company and Carlson.

Finally, we note that, given the remedial purpose of the unemployment compensation statute, broad interpretations of the employment relationship are preferred. *Rochester Dairy Co.*, 217 Minn. at 465, 14 N.W.2d at 783.

## DECISION

The Commissioner's finding that an employment relationship existed between Carlson and the cab company is supported by substantial evidence in the record.

Affirmed.