Darla J. NEVE, Respondent,

v.

AUSTIN DAILY HERALD, Relator,

Commissioner Of Economic Security, Respondent.

No. C9–96–156.

Court of Appeals of Minnesota.

Aug. 13, 1996.

tive intent of the process itself.

Darla J. Neve, Austin, Pro Se.

Mark R. Anfinson, Minneapolis, for Relator.

Kent E. Todd, St. Paul, for Respondent Commissioner of Economic Security.

Considered and decided by SCHUMACHER, P.J., and LANSING and SHORT, JJ.

## OPINION

SCHUMACHER, Judge.

Respondent Commissioner of Economic Security determined that respondent Darla J. Neve was an employee of—rather than an independent contractor for—relator Austin Daily Herald for purposes of reemployment insurance taxation. We reverse.

## FACTS

From October 20, 1989, through April 22, 1991, Neve was a motor route carrier for the Herald. A written agreement described her as an independent contractor, required her to deliver bundles and single newspapers to customers within a fixed territory, and reserved the right to determine the order of delivery. The contract also obligated Neve to provide her own delivery vehicle, maintain set levels of automobile insurance, and hold the Herald blameless from all damages she might incur in the course of her work. For these efforts, Neve received a flat daily fee, which the Herald calculated based in part on the number of customers and the physical size of her route. The Herald remitted payment to Neve on a weekly basis with the understanding that she bore responsibility for her tax liabilities. The parties' agreement ran on a year-to-year basis and required three weeks' notice by either party of an intent to discontinue the relationship, except in the event of material breach.

The Herald supplied its carriers with a "motor route policy," which instructed them to complete deliveries by 5:00 p.m. on weekdays and 8:00 a.m. on Sundays and to place newspapers in bags during inclement weather. The document also informed drivers that they were "expected" to: (1) maintain a consistent order of delivery so that customers would receive their papers at a similar time every day; (2) arrange for reliable substitutes when necessary; (3) promote the Herald at every opportunity; (4) count their single-delivery papers to ensure they had an adequate supply; and (5) maintain records concerning the exact number of papers delivered to merchants and vending machines.

The Herald's circulation director testified before a reemployment insurance judge that

Neve's main duty was to deliver papers to the correct addresses within the applicable deadlines. While the Herald urged Neve to cultivate goodwill by adhering to a consistent delivery pattern, it did not penalize her when she reversed the order of delivery or split the route with an assistant, each simultaneously covering one-half of the territory. The Herald instructed Neve to deliver papers door-to-door in towns, but allowed her to place them in plastic tubes on rural routes.

Neve testified that she: (1) enjoyed the freedom to vary the order of delivery and did so when her schedule required; (2) originally delivered only bundles and single papers to plastic tubes, but the absence of local carriers in three towns temporarily required her to deliver some of the papers door-to-door; (3) could, and did, "hire" substitutes of her own choice; and (4) recalled only one instance in which the Herald told her not to use a particular substitute again because it received a number of complaints.

## ISSUE

Did the Commissioner correctly decide that Neve was an employee rather than an independent contractor?

## ANALYSIS

■ The parties disagree over the standard of review that should be applied. In reemployment insurance cases, whether a worker is an employee or independent contractor is a mixed question of law and fact. *Blue & White Taxi v. Carlson*, 496 N.W.2d 826, 828 (Minn.App.1993); *Lakeland Tool & Eng'g v. Engle*, 450 N.W.2d 349, 352 (Minn. App.1990); *Carey v. Coty Constr.*, 392 N.W.2d 746, 748 (Minn.App.1986); *Wise v. Denesen Insulation Co.*, 387 N.W.2d 477, 479 (Minn.App.1986) (citing *Darvell v. Paul A. Laurence Co.*, 239 Minn. 55, 59, 57 N.W.2d 831, 834 (1953)). This mixed standard is similar to that applied in employee misconduct cases, in which determining whether the evidence supports the findings of fact is a question of fact, but then determining whether the facts rise to the level of misconduct is a legal issue upon which this court exercises independent judgment. *See, e.g., Ress v. Ab-* *bott N.W. Hosp.*, 448 N.W.2d 519, 523 (Minn. 1989).

The cases cited by the dissent in its assertion that the question presented here is strictly a factual one are tort and workers' compensation decisions, not those reviewing the Commissioner's determination in reemployment insurance cases. The dissent's reliance on these cases is misplaced. Even if we were to look to such cases, a recent supreme court decision addressing this issue in the context of workers' compensation explicitly acknowledges that "the determination of employment status is, ultimately, a legal one." *Hunter v. Crawford Door Sales*, 501 N.W.2d 623, 624 (Minn.1993).

■ We apply a two-step analysis. First, if the facts are disputed, we determine whether there is evidence reasonably tending to support the Commissioner's findings of fact. The legislature recently changed the standard that we apply in reviewing the Commissioner's findings of fact regarding employment status in reemployment insurance cases. Previously, such findings were reviewed under the Administrative Procedures Act using a "substantial evidence" standard of review. *See* Minn.Stat. § 14.69 (1994). In 1995, the legislature enacted changes that make the appeal procedure in employment-status decisions the same as that in reemployment insurance benefits cases. 1995 Minn. Laws ch. 54 §§ 11, 29. Thus, we apply the standard used in benefit eligibility cases:

> The narrow standard of review requires that findings be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Ctr.*, 332 N.W.2d 25, 26 (Minn.1983) (applying test in case involving qualification for reemployment insurance benefits). While our deference to the Commissioner's findings is broad, it is not without limit. *See Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143–47, 128 N.W.2d 324, 326–28 (1964) (reversing administrative tribunal's finding of employment relation because evidence, when viewed as whole, did not support that finding).

48

■ The second part of our two-step analysis involves a question of law: we apply the law to the facts to determine whether an employment relationship exists. When the facts are undisputed, we move directly to step two, and the determination of whether an employment relationship exists is purely a legal question. *Lakeland Tool,* 450 N.W.2d at 352; *Carey,* 392 N.W.2d at 748; *Wise,* 387 N.W.2d at 479.

2. The traditional factors used to determine whether an employment relationship exists are:

> (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.

*Guhlke,* 268 Minn. at 143, 128 N.W.2d at 326.

■ At oral argument, the Commissioner acknowledged the Department's resolution of Neve's employment status essentially turned on the Herald's exercise of control over the delivery of newspapers by instructing Neve as to: (1) the people to whom she was to deliver newspapers; (2) the exact location of deliveries (a plastic tube in rural areas, as opposed to the doorstep of subscribers in towns); (3) the deadline by which she was to complete her task; (4) bagging procedures for inclement weather; and (5) the Herald's preference for a consistent pattern of delivery. In the newspaper industry, however, restrictions over the time, place, and manner of delivery generally do not create a master-servant relationship because they reflect only the publisher's insistence that the carrier supply **what** the publisher has promised to the customer: a dry newspaper, delivered in a timely and convenient fashion on a relatively consistent schedule. *See, e.g., Murrell v. Goertz,* 597 P.2d 1223, 1225–26 (Okla.Ct.App.1979) (newspaper may prescribe outcome-determinative policies, such as time for delivery and rubber-banding of papers, without transforming carrier into employee), *cert. denied* (Okla. July 16, 1979); *see also* Fred F. Bradley, Note, *Newspaper Carrier—Servant or Independent Contractor?,* 46 Ky. L.J. 596, 604 (1958) (majority of cases find lack of sufficient control to support

employment relationship, even though newspapers typically define their carriers' territory and customer base, impose deadlines, and require special packaging in bad weather). Because these factors relate to the definition of Neve's task and not to the means of accomplishing it, they are not relevant to the employment-status inquiry and do not support the Commissioner's decision. *See Frankle v. Twedt,* 234 Minn. 42, 47, 47 N.W.2d 482, 487 (1951) ("The determinative right of control is not merely over **what** is to be done, but primarily over **how** it is to be done."); *see also Hammes v. Suk,* 291 Minn. 233, 235, 190 N.W.2d 478, 480–81 (1971) (independent contractor remains subject to control over end product).

■ The Commissioner also argues that the determination is supported by the Herald's reserved, but unexercised, right to set the order of delivery. *See Frankle,* 234 Minn. at 47, 47 N.W.2d at 487 (it is right of control—not its exercise—that is important). We conclude the Commissioner's reliance on this fact is unreasonable given the undisputed evidence that Neve: (1) had no set working hours; (2) used her own vehicle when performing her task; (3) varied the time and order of delivery without penalty; (4) hired substitutes and helpers when necessary, the Herald's only requirement being that they adhere to rules governing the end product; (5) was not subject to immediate discharge except for a breach of her contract; (6) received a flat fee based on the size and number of customers on her route; and (7) assumed sole responsibility for her tax obligations. *See Boland v. Morrill,* 270 Minn. 86, 91, 132 N.W.2d 711, 715 (1965) (it is necessary to examine overall relationship between parties); *Guhlke,* 268 Minn. at 143–47, 128 N.W.2d at 326–28 (reversing administrative determination of employment relationship because record did not support decision, even though alleged employer gave instructions regarding time and order of delivery); *cf. Toughill v. Melcher,* 288 Minn. 266, 275–76, 179 N.W.2d 633, 638–39 (1970) (criticizing determination of independent contractor relationship and remanding for additional evidentiary hearings under circumstances in which consignor of goods not

only set order of delivery, but also employed driver full time, paid for his services on hourly basis, and revised instructions throughout course of day).

## DECISION

Neve was an independent contractor. The Commissioner erred in its decision.

**Reversed.**

SHORT, J., concurring in part, dissenting in part.

SHORT, Judge (concurring and dissenting).

I concur as to the result because the record does not reasonably support the Commissioner's finding of a master-servant relationship. However, I dissent from the application of de novo review to the inferences that may be drawn from predicate facts.

Although we are free to review de novo the application of law to undisputed facts, the existence of an employment relationship constitutes the "ultimate fact issue," which cannot be decided as a matter of law simply because the predicate facts are uncontested. *See Darvell v. Paul A. Laurence Co.,* 239 Minn. 55, 62, 57 N.W.2d 831, 835 (1953) (stating the determination of an employment relationship is an "ultimate fact issue"); *see also State by Spannaus v. Mecca Enters., Inc.,* 262 N.W.2d 152, 154 (Minn.1977) (treating the issue as a question of fact, which turns chiefly on the worker's submission to control over the means of achieving a particular goal); *Holzemer v. Minnesota Milk Co.,* 259 N.W.2d 592, 593 (Minn.1977) (same); *Ossenfort v. Associated Milk Producers, Inc.,* 254 N.W.2d 672, 676 (Minn.1977) (same); *Edelston v. Builders & Remodelers, Inc.,* 304 Minn. 550, 550–51, 229 N.W.2d 24, 25 (1975) (same); *Hagberg v. Colonial & Pac. Frigidways, Inc.,* 279 Minn. 396, 403–04, 157 N.W.2d 33, 39 (1968) (same); *Tretter v. Dart Transit Co.,* 271 Minn. 131, 134–36, 135 N.W.2d 484, 486–87 (1965); *Frankle v. Twedt,* 234 Minn. 42, 49–51, 47 N.W.2d 482, 488–89 (1951) (same); *Turner v. Schumacher Motor Express, Inc.,* 230 Minn. 172, 175–76, 41 N.W.2d 182, 184 (1950) (same); *Carter v.*

*W.J. Dyer & Bro.,* 186 Minn. 413, 414–17, 243 N.W. 436, 437–38 (1932) (same); *cf. Santiago v. Phoenix Newspapers, Inc.,* 164 Ariz. 505, 794 P.2d 138, 141 (1990) (analyzing the employment-status determination as an ultimate fact issue, which may not be decided on a motion for summary judgment if the undisputed predicate facts would support multiple inferences); *Fleming v. Foothill–Montrose Ledger,* 71 Cal.App.3d 681, 139 Cal.Rptr. 579, 581 (Ct.App.1977) (same); *Murrell v. Goertz,* 597 P.2d 1223, 1225 (Okla.Ct.App.1979) (same), *cert. denied* (Okla. July 16, 1979); Restatement (Second) of Agency § 220 cmt. c (1957) (same).

In rare cases, the evidence may be so one-sided as to allow resolution of the employment-status issue as a matter of law. *See Frankle,* 234 Minn. at 51, 47 N.W.2d at 489 (adopting this approach, but limiting its application to circumstances in which the underlying facts are undisputed and support only one inference); *Ledoux v. Joncas,* 163 Minn. 498, 500–01, 204 N.W. 635, 636–37 (1925) (affirming an employment-status decision as a matter of law because "whether there is any evidence tending to support a given finding, and whether the evidence conclusively establishes a particular fact, are questions of law"); *see also Santiago,* 794 P.2d at 141 (recognizing the issue may be decided as a question of law if the facts are undisputed and support only one inference); *Fleming,* 139 Cal.Rptr. at 581 (same); *Murrell,* 597 P.2d at 1225 (same); Restatement (Second) of Agency § 220 cmt. c (same). However, calling the inquiry a question of law does not alter our standard of review.

There is but little dispute as to the facts, and the question presented is, in one respect, a question of law. But we are reviewing the finding of fact made by the referee and industrial commission, that the petitioner * * * was an employee of the realty company, hence not an independent contractor. So the question presented here, **whether or not we call it a question of law,** is whether there is evidence reasonably sufficient to sustain this finding. If reasonable minds could, on the evidence, reach different conclusions on the question, * * * this court must accept the[ ] finding.

* * * *

We do not try these cases de novo * * *.

*Farnam v. Linden Hills Congregational Church*, 276 Minn. 84, 89, 149 N.W.2d 689, 693 (1967) (quoting *Rick v. Noble*, 196 Minn. 185, 189, 264 N.W. 685, 687 (1936)) (emphasis added); *cf. Hunter v. Crawford Door Sales*, 501 N.W.2d 623, 624 (Minn.1993) (referring to the employment-status determination as "ultimately, a legal one," but applying the tests established by long-standing precedent). Nor does the standard of review change simply because the question arises in a reemployment insurance, as opposed to a workers' compensation or tort, case. *See Speaks, Inc. v. Jensen*, 309 Minn. 48, 50 & n. 1, 243 N.W.2d 142, 144 & n. 1 (1976) (requiring courts to follow an identical employment-status analysis in reemployment insurance and workers' compensation cases and citing Restatement (Second) of Agency § 220 as an authoritative guide to the inquiry).

Our own precedent substantively adheres to the foregoing principles, which the newspaper recognizes by its request that we reverse because the evidence, viewed as a whole, does not reasonably support the Commissioner's decision. *Compare St. Paul Fire & Marine Ins. Co. v. Sparrow*, 378 N.W.2d 12, 14–15 (Minn.App.1985) (stating the determination of employment status presents a question of fact and reviewing the record for evidentiary support), *review denied* (Minn. Jan. 23, 1986) *and LeGrand Supper Club v. Seline*, 348 N.W.2d 805, 807–08 (Minn.App. 1984) (same) *with Blue & White Taxi v. Carlson*, 496 N.W.2d 826, 828–29 (Minn.App. 1993) (calling the inquiry a mixed question of fact and law, but simply examining the rec-ord for evidence to support the Commissioner's findings) *and Lakeland Tool & Eng'g, Inc. v. Engle*, 450 N.W.2d 349, 352–53 (Minn. App.1990) (same).

This court's decision to subject an employment-status determination to the two-step analysis used in misconduct cases is ill-conceived. "Misconduct" is an *undefined* statutory term, which requires the trier of fact first to determine what happened and, then, to discern whether the legislature intended "misconduct" to encompass that behavior. *See Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 373–75, 204 N.W.2d 644, 645–46 (1973) (accepting the administrative tribunal's findings of fact, but construing "misconduct" as a matter of law). By contrast, the statute governing our inquiry expressly defines employment status in terms of master-servant law, under which precedent authorizes no more than an examination of the record for evidentiary support. *See* Minn. Stat. § 268.04, subd. 12(1)(d) (1994) (defining "employment" as services provided by an individual who is a servant under the law of master and servant). Although I agree the Commissioner's decision cannot endure scrutiny under any standard of review, I dissent from this court's decision to substitute its own judgment for that of the Commissioner concerning the inference to be drawn from predicate facts.